# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| JOEL HOLDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No.: 3:09-CV-32 PPS |
| ) | |
| TOWN OF BRISTOL, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Joel Holder claims he was subjected to severe sexual harassment and a hostile work environment while he served as a volunteer Reserve Police Officer for the Town of Bristol, Indiana. When Holder complained about the outrageous conduct, instead of addressing the problem, the Assistant Police Chief pressured him to resign, which he did. The allegations of sexual harassment in this case are very serious and troubling. But before I can address them, I must first answer two predicate questions: as a volunteer reserve officer, was Holder an employee and was the Town an employer under Title VII? These are the questions raised by the Town in its present motion for summary judgment. (DE 9.)

## I. FACTUAL BACKGROUND

Holder served as a Reserve Police Officer for the Town of Bristol from August 2006 until his resignation around July 2007. (Compl. at ¶¶ 9, 15-18.) In order to become a Reserve Police Officer, Holder had to complete some minimum training and get approval from the Town Marshal. (DE 13-2 at 16.) While on duty, Holder was subject to the Bristol Police Department's Standard Operating Procedures, Rules, and Regulations. (DE 13-5, 13-6, 13-7.) The Town has 13 individuals – including seven police officers – working for it that the Town considers

employees.  (DE 9 at 7-8.)  These individuals receive a paycheck, health insurance, and a contribution to a retirement plan.  (*Id.*)  Since August 2006, an additional 20 individuals – and as many as 15 at a time – have served as Bristol Reserve Police Officers.  (DE 13-3.)

The Town considers its Reserve Police Officers to be volunteers; there is no salary, health insurance, or retirement benefits.  (DE 9 at 4.)  Reserve officers do receive a uniform allowance (including dry cleaning expenses), free training in various areas of law enforcement, use of the department's equipment (such as car, service weapons, protective gear, etc.), as well as worker's compensation coverage and disability insurance to protect the Town from claims by reserve officers in the event they are injured and/or rendered disabled in the line of duty.  (*Id.* at 5; DE 14 at 11.)  In addition, the State of Indiana maintains a fund for providing death benefits for public safety officers who are killed in the line of duty.  Ind. Code § 5-10-10-1, *et seq.* Reserve officers are assigned works hours based on when they make themselves available to volunteer.  (DE 13-2 at 6.)  Experience as a Reserve Police Officer is not a prerequisite – nor is it necessarily beneficial – for getting a job as a paid law enforcement officer.  (*Id.* at 5.)  That said, four of the eight individuals who have worked as full time police officers since August 2006 previously served as reserve officers.  (DE 13-3.)

Holder filed this lawsuit on January 26, 2009, asserting claims under Title VII that the Town of Bristol discriminated against him on the basis of sex, subjected him to a hostile work environment, and retaliated against him for complaining about the discrimination.  The facts relating to those allegations, if they are true, are appalling, but need not be discussed for purposes of deciding the present motion.

2

## II. DISCUSSION

The Town is seeking summary judgment, contending Holder cannot pursue this discrimination lawsuit because (a) Holder is not an employee and (b) the Town is not an employer under Title VII. In this case, the second issue necessarily turns on the outcome of the first because if Holder and the other reserve officers are not employees, then Bristol employs too few employees to be subject to Title VII liability.

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 618, 625 (7th Cir. 2001). When examining the record, the court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002).

Title VII makes it unlawful for an employer to fire an employee on the basis of sex, or because the employee has complained of discrimination. *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). The existence of an actual or prospective employment relationship is essential in a Title VII case because Title VII only governs "employers" and only protects "employees." *See Taylor v. ADS, Inc.*, 327 F.3d 579, 581 (7th Cir. 2003). An employer is subject to Title VII if it "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The Town of Bristol has 13 employees, if you don't count reserve police officers, and over 25 if you do. So as mentioned

above, the dispositive issue is whether or not reserve police officers are employees. The term "employee" is defined in Title VII – rather unhelpfully – as "an individual employed by an employer." 42 U.S.C. § 2000e(f). This circular definition has long frustrated federal courts, who have since given the term some meaning. *Smith v. Castaways Family Diner*, 453 F.3d 971, 975-76 (7th Cir. 2006) (citations omitted).

Holder asks me to follow the Seventh Circuit's five-factor "economic-realities" test, used to determine whether an individual is an employee versus an independent contractor under Title VII. *See Worth v. Tyler*, 276 F.3d 249, 263 (7th Cir. 2001). Under the test, the Court considers:

(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work;

(2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace;

(3) responsibility for the cost of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance operations;

(4) method and form of payment and benefits; and

(5) length of job commitment and/or expectations.

*Id.* Of these, the first factor – the extent of the employer's control and supervision over the worker – is the most important. *Id.* In this case, there is a genuine issue of fact as to whether Holder is an independent contractor. First, Holder is subject to the Bristol Police Department's long list of standard operating procedures for performing law enforcement duties. Second, the Police Department provides all or most of the training necessary for the position. Third, the Police Department foots the bill for all of the uniforms and equipment related to the reserve officers' duties. On the other hand, Holder doesn't receive any payment or benefits and can be relieved of his duties at will.

But the economic realities test isn't really apt here; it's like using a screwdriver when the job calls for a wrench. The question isn't so much whether Holder is an independent contractor as opposed to an employee, but whether he is a volunteer or an employee. As one court put it, "[c]ontrol loses some of its significance in the determination of whether an individual is an employee in those situations in which compensation is not evident." *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 220 (4th Cir. 1993). The Second Circuit has made the same point when it noted that focusing on the question of whether someone is an independent contractor versus an employee misses the point in the volunteer context because there is an "antecedent question" of whether the person was hired for any purpose at all. *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997).

The Seventh Circuit has not yet addressed the issue of where you draw the line between a volunteer and a Title VII employee. But the circuits that have considered this issue have uniformly held that remuneration in exchange for services is an essential condition to the existence of an employer-employee relationship. *See, e.g., York v. Assoc. of Bar of City of N.Y.*, 286 F.3d 122, 126 (2d Cir. 2002) ("[W]here no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist."); *Daggit v. United Food & Commercial Workers In't Union, Local 304A*, 245 F.3d 981, 987 (8th Cir. 2001) ("Without compensation, no combination of other factors will suffice to establish the relationship."); *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244 (11th Cir. 1998) ("Congress did not intend Title VII to protect mere titles or labels; an individual who sues only to maintain a purely gratuitous working relationship does so without the protection of that statute.").

5

In the modern economy, people are compensated for work in many non-traditional ways. So remuneration can be direct or indirect and need not take the form of salary or wages. For example, the Second Circuit found that an employment relationship existed where the plaintiff received no salary, but "numerous job-related benefits" such as a retirement pension, life insurance, death benefits, disability insurance and some medical benefits. *Pietras v. Bd. of Fire Comm'rs of the Farmingdale Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999).

The Fourth Circuit's decision in *Haavistola* appears to be the leading case. In *Haavistola*, an unsalaried firefighter brought a Title VII sex discrimination claim against the volunteer fire company she worked for. *Haavistola*, 6 F.3d at 213. Although the plaintiff didn't receive direct compensation as a member of the fire company, she received numerous other benefits including: a state-funded disability pension, survivors' benefits, scholarships for dependents upon disability or death, group life insurance, tuition reimbursement for courses in emergency medical and fire service techniques, workers' compensation coverage, tax-exemptions, reduced-rates on commemorative license plates, and an opportunity to obtain paramedic certification. *Id.* at 221. The Court held that a jury must decide whether this substantial list of indirect benefits amounted to remuneration or mere "inconsequential incidents of an otherwise gratuitous relationship." *Id.* at 221-22.

*Haavistola* presented a clear case where the putative employee received so many unique benefits that the question of remuneration was best left for the jury. Since *Haavistola*, several courts have decided as a matter of law that some benefit packages are insufficient to create an employment relationship. For example, the Second Circuit has concluded that the benefit must be financial in nature and meet a minimum level of "significance or substantiality." *See York*

6

286 F.3d at 126 (finding an attorney's membership in a bar association wasn't an employment relationship where all she received were limited tax deductions and networking opportunities); *see also O'Connor*, 126 F.3d at 116 (finding a student intern at a hospital was not a Title VII employee because she received no salary, wages, or employee benefits).

District courts facing this issue have taken a wide variety of approaches in deciding whether non-traditional benefits amount to remuneration. In *Keller v. Niskayuna Consol. Fire Dist.*, 51 F. Supp. 2d. 223 (N.D.N.Y. 1999), the court found that volunteer firefighters, whose only financial benefit was the opportunity to receive a service award at the age of 55, were not employees because the award was not a form of guaranteed consideration in exchange for services. *Id.* at 231-32. *But see E.E.O.C. v. Inc. Vill. of Valley Stream*, 535 F. Supp.2d 323, 328-29 (E.D.N.Y. 2008) (finding that the same potential retirement benefit created an issue of fact as to employment relationship). In *Scott v. City of Minco*, 393 F. Supp.2d 1180 (W.D. Okla. 2005), the court held that a firefighter's line-of-duty and pension benefits did not amount to remuneration because the former were only available if the firefighter was injured or killed on the job and the latter was only available after ten years of service. *Id.* at 1190.

The case of *Moran v. Harris County*, 2007 WL 2534824 (S.D. Tex. 2007), presented facts somewhat similar to this one. There, a county maintained a reserve officer program whereby reserves performed law enforcement duties similar to the county's paid constables. *Id.* at *1. The county would sometimes hire reserve members as constables. *Id.* Moran, who was denied a position as a reserve, argued that he would have received numerous benefits such as free certification classes, networking opportunities with local police officers, and on the job experience. *Id.* Although the court agreed that these perquisites would help Moran get a job as a

7

paid police officer, it noted that "he would not have become a county employee simply by receiving them." *Id.* Since the benefits had no appreciable value, the court found that the county reserve officers were not employees under Title VII. *Id.*

A minority of courts have proposed that non-financial benefits that create or relate to career opportunities may establish an employment relationship. For example, in *Neff v. Civil Air Patrol*, 916 F.Supp. 710 (S.D. Ohio 1996), plaintiff – an unpaid civil air patroller – claimed she derived appreciable benefit from various free training and educational opportunities such as flight training, a corporate leadership course, a chaplain course, and a scanner/observer training session. *Id.* at 713-14. The court found that these benefits did not create an employment relationship, but indicated they might have if plaintiff had demonstrated "some economic dependence upon, and not mere pleasure from, the compensation." *Id.* at 712-14. Similarly, the court in *Rafi v. Thompson*, 2006 WL 3091483 (D.D.C. 2006), permitted a physician volunteering at the National Institute of Health to proceed on a Title VII claim because she alleged that the position provided a "clear pathway to employment" at NIH. *Id* at \*1. Although Rafi couldn't establish that pathway or connection at summary judgment, he did show that the NIH position allowed him to participate in an NIH genetics training program, which would have certified him in that field. *Id.* Since NIH was one of the few institutions that offered this accreditation training program, the volunteer position offered a more practical way of satisfying Rafi's professional certification requirements. *Id.* The court held that this opportunity established the "plausibility" of an employment relationship under Title VII. *Id.*

In this case, Holder asserts that he received numerous benefits as a Bristol Reserve Police Officer including: (1) free use of police equipment; (2) a uniform and dry cleaning

8

allowance; (3) worker's compensation insurance; (4) disability insurance; and (5) state-funded life insurance for death in the line of duty. But all of these so-called benefits are incidental to Holder's volunteer duties and have no independent value. For example, the police department pays for Holder's use of a police car, weapons, and protective gear. This is only sensible since the reserve officers need these items to perform their volunteer duties. It's like giving someone who volunteers at a soup kitchen a ladle. If the volunteer officers are putting themselves in harm's way in order to ensure public safety, the least the Town can do is pay for their equipment. But Holder doesn't get to keep these items for personal use. And although the Town gives reserve officers money for a police uniform and dry cleaning, this too only serves the purpose of aiding them in their official duties. Holder can't just pocket the money and wear civilian clothes on duty.

As for the line-of-duty benefits that Holder received – workers' compensation, disability insurance, and death benefits – these are not guaranteed forms of remuneration. Holder and his dependents would have only seen a dime if something bad happened to him while he was on duty. Holder was never injured in the line of duty. So he didn't receive any health insurance benefits or compensation for medical expenses. It's worth noting that these insurance benefits are just as much for the Town's protection as they are for the reserve officers. If Holder had injured himself and made a claim against the Town, the policies would cover the medical costs. So, without more, it can't be said that these mechanisms for insuring risk had independent value as consideration in exchange for labor. *Compare with Haavistola*, 6 F.3d at 221-22 (finding an issue of fact where plaintiff received workers compensation and disability and survivors' benefits, along with many other non-line-of-duty benefits such as scholarships for survivors,

9

group life insurance, professional certifications, tuition reimbursement, discounts and tax-exemptions).

Holder also states that the Town provided reserve officers with some officer training and that reserve officers had a legitimate expectation of future employment opportunities by virtue of the fact that several current paid officers were formerly reserve officers. But these facts are too weak to establish an employment relationship. Most courts have concluded that – without more – training related to the volunteer duties, networking opportunities, and the possibility of future employment aren't appreciable enough to create an employment relationship. *See, e.g., York* 286 F.3d at 126; *Moran*, 2007 WL 2534824, at *1. And under the Second Circuit view, these benefits can't be remuneration because they aren't financial in nature. *See York* 286 F.3d at 126. I need not decide the issue definitively although I am persuaded by the reasoning in *Neff* and *Rafi* that non-financial benefits could establish an employment relationship in the right context. But more is needed. The *Neff* case suggests that they can be if the plaintiff can demonstrate some economic dependence on the benefits. *See also, e.g., Brown v. City of N. Chicago*, 2006 WL 1840802, at *6 (N.D.Ill. 2006) (finding compensation in the form of food stamp benefits was sufficient to establish an employment relationship under the Title VII standard). Holder doesn't argue that he was reliant upon the training he received for his livelihood. Nor does he suggest – as in *Rafi* – that the volunteer position offered him unique opportunity to advance his career. Instead, the training was simply necessary to perform his reserve officer duties safely and effectively.

As for the prospects of future employment opportunities, Holder's point that half of the current paid officers were once reserve officers does little to advance his cause. The same was

true in the *Moran* case. Like Moran, Holder can show at most that being a reserve officer would have given him a leg up in becoming a full-time officer. I have no idea whether Holder ever wanted to become a full-time Bristol police officer. He doesn't say one way or another. But if that was his goal, he offers no evidence that being a reserve officer provided a clear pathway to becoming a salaried officer. Many things would have to go his way. For one thing, a paid position would have to open up. And he would have to compete with other applicants – reserve officers and non-reserves alike. The Court is unaware of any cases – and Holder hasn't pointed me to any – where a future employment prospect created an employment relationship and subjected an entity to Title VII liability. The court in *Rafi* posits that a scenario involving a more certain "pathway" to future employment may establish that relationship. This is not such a case. In this case, any expectation by Holder and his colleagues of future employment with the Town is speculative.

Without more, Holder's work for the Town of Bristol is more akin to community service than gainful employment. Since Holder has not demonstrated that he received appreciable consideration in exchange for their services, Holder is not an employee under Title VII and therefore cannot maintain an action under that statute. And because the same is true for other Bristol Reserve Police Officers, it follows that Holder cannot establish that the Town of Bristol has had 15 or more employees to qualify as an employer under Title VII.

## III. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [DE 9] is **GRANTED** for all counts. The clerk shall **ENTER FINAL JUDGMENT** in favor of the Defendant Town of Bristol and against Plaintiff Joel Holder. The clerk shall treat this civil action as **TERMINATED**. All further settings in this action are hereby **VACATED.**

**SO ORDERED.**

ENTERED: September 17, 2009

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
